IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Leon Billups, | ) | Civil Action No. 8:09-2560-CMC-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Jon E. Ozmint, Stan Burtt, | ) | |
| Gregory Knowlin, Officer Wilson, | ) | |
| Dr. C. Wigfall, and Dr. NFN Fulmer, | ) | |
| Defendants. | ) | |
| _____ | ) | |

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to 42 U.S.C. § 1983. This matter is before the Court on the Defendants' Motion for Summary Judgement. (Dkt. # 27.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On March 24, 2010, the Defendants filed a Motion for Summary Judgment. (Dkt. # 27.) On March 25, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On May 24, 2010, the Plaintiff filed a response opposing the Defendants' Summary Judgment Motion. (Dkt. # 34.)

## FACTS

In his Complaint, the Plaintiff alleges that on October 24, 2007, the Lieber Correctional Institution ("LCI"), where he was incarcerated at that time, was placed into lock down status and the Rapid Response Team began to search each of the prisoner's cells for contraband. (Compl. at 3.) The Plaintiff was removed from his cell and with the use of a metal detector, it was determined that the Plaintiff had a metal object in his mouth. *Id.* The Plaintiff alleges he was escorted into another area of the LCI so that the Defendant Officer Wilson could conduct a more extensive search. *Id.* The Plaintiff alleges that he told Officer Wilson that he wore dentures and Officer Wilson instructed him to remove them. *Id.* He states he removed his dentures and gave them to Officer Wilson to inspect. *Id.* He alleges Officer Wilson used "excessive force," (Compl. at 8), and "snapped" two gold crowns from the dentures and severely damaged them. (Compl. at 3). The Plaintiff alleges the damaged dentures had jagged edges which made it painful for him to eat. (Compl. at 4.) He alleges his mouth, lips, and tongue have been cut by the jagged edges.

The Plaintiff was transferred on November 24, 2008, to the Turbeville Correctional Institution ("TCI") and he alleges that despite repeated requests, he has not received any dental care at the TCI. (Compl. at 5.) The Plaintiff is seeking actual and punitive damages and the repair or replacement of his dentures. (Compl. at 6; 9.)

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are

insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION[1]

**Exhaustion of Administrative Remedies**

The Defendants contend that the Plaintiff did not exhaust his administrative remedies. In response, the Plaintiff argues that because he is illiterate and was misled, he should be excused for his failure to file an appeal from the denial of his Step One grievance.

It is undisputed that on November 5, 2007, the Plaintiff has filed one grievance in regard to the claims in this action, LCI 1700-07, regarding the damage to his dentures. (Compl. Attach. # 3; Defs.' Mem. Supp. Summ. J. Mot. Attachs. # 2 - Jenkins Aff. at 4.) The Plaintiff did not receive a response to his grievance until nine months later on August 11, 2008. *Id.* The Plaintiff signed the grievance as having accepted the action taken and he did not appeal the decision nor make any further claims on the issue. *Id.*

Exhaustion of administrative remedies prior to bringing a federal lawsuit is required by 42 U.S.C. § 1997e(a) (stating "No action shall be brought with respect to prison conditions

---

[1]To the extent that the Plaintiff is attempting to allege a claim for an unreasonable search or seizure, (Pl.'s Mem. Opp. Summ. J. Mot. at 3), these claims would fail. The Fourth Amendment prohibits unreasonable searches and seizures where persons have a reasonable expectation of privacy in the places searched or items seized. Katz v. United States, 389 U.S. 347, 360-61, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). However, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer,* 468 U.S. 517, 527-28(1984). Prisoners have no legitimate expectation of privacy in their cells or in their possessions. *Id.* at 526. Because a prison inmate has no legitimate expectation of privacy, he has no constitutional claim for an illegal search and seizure. *Id.* at 528. Accordingly, the Plaintiff's claims, if any at all, alleging an illegal search and seizure should be dismissed.

under Section 1983 of this Title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). A prisoner has not exhausted all of his administrative remedies by "failing to follow the required steps so that remedies that once were available to him no longer are." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Exhaustion requires that the prisoner utilize all available procedures so that prison officials have the opportunity to remedy the situation administratively. *Id.*

In order to exhaust the South Carolina Department of Corrections ("SCDC") administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under § 1983. 42 U.S.C. § 1997e.

Here, on the one hand, the Plaintiff did file a Step One grievance regarding the damage to his dentures, but he did not receive a timely response and some case law holds that claims are deemed exhausted if there is not a timely response. *See, Boyd v. Corrections Corp. of America,* 380 F.3d 989, 996 (6th Cir. 2004) (following the lead of the other circuits that have considered the issue, the court concluded that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002) (stating that a prison's failure to timely respond renders administrative remedies unavailable). These cases seem to be limited to instances where the plaintiff files an action after the time to respond has elapsed and no response has been received.

However, on the other hand, there is no evidence the Plaintiff attempted to appeal the denial of his grievance when he did receive a response. In fact, the Plaintiff acknowledges that he signed the Step One grievance as accepting the response "with the hopes of getting relief from his pain and suffering." (Pl.'s Mem. Opp. Summ. J. Mot. at 5.) The Plaintiff also states he is illiterate and he was "misled" into signing the response. *Id.* Prison wardens are required to "ensure that assistance is available for inmates who are illiterate." 28 C.F.R. § 542.16(b). However, an illiterate inmate must have asked for and been refused assistance in pursuing his administrative remedies before his illiteracy may excuse his failure to exhaust. *See Ramos v. Smith,* 187 F. App'x 152, 154 (3d Cir. 2006)(holding that exhaustion was not excused where illiterate prisoner did "not claim that he asked for and was refused assistance in

6

filing his administrative appeals"). In the instant case, it is undisputed that the Plaintiff did not ask for assistance in pursuing his administrative remedies.

Based on the above, the evidence presents a sufficient issue of material fact as to whether the Plaintiff properly attempted to exhaust his administrative remedies prior to filing this lawsuit regarding the damaged dentures and thus the undersigned finds that summary judgment on this claim on that basis would be inappropriate. However, the undersigned notes there is no evidence in the record that the Plaintiff filed any grievance at the TCI regarding his alleged denial of dental treatment. Accordingly, the Plaintiff's claims regarding the denial of dental treatment were not exhausted and the Defendants should be granted summary judgment on these claims. Alternatively, these claims should be dismissed on the merits as discussed below.

**Claim regarding Damage to Dentures**

Even if the Plaintiff hand properly exhausted his administrative remedies regarding the damage to his dentures, this claim fails on the merits. An intentional deprivation of property by a state employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. *See McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir. 1986) (*citing* S.C. Code Ann. § 15-69-10, et seq.). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." *Parratt v. Taylor*, 451 U.S. 527 (1981).

Here, the Plaintiff appears to claim that Officer Wilson intentionally deprived him of his personal property by breaking off the gold crowns which were attached to his dentures. As noted above, the Plaintiff has an adequate post-deprivation remedy under South Carolina law. Furthermore, the plaintiff makes no allegations and presents no evidence that Officer Wilson's actions were authorized or approved by either prison policy or any higher ranking supervisory officials.[2] Therefore, while the Plaintiff may have some claim against the Defendants for the deprivation of his personal property under South Carolina law, he does not have a claim actionable under 42 U.S.C. § 1983.[3]

**Denial of Dental Treatment**

Even if the Plaintiff had exhausted his remedies on the denial of dental treatment claims, the undersigned finds these claims fail on their merits. The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id*. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id*. at 104. To be liable

---

[2] In fact, in his Complaint, the Plaintiff makes no allegations of personal involvement on the part of the Defendants Ozmint, Burtt, and Knowlin. (See Compl.)

[3] It appears that the Plaintiff filed an action in state court in 2008 which was dismissed due to the Plaintiff's failure to file an affidavit from a qualified dental expert in support of his claims. (See Dkt. # 41.) The Plaintiff states that he is seeking redress from the state court's adverse ruling in this action. *Id.*

under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle,* 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " *Coppage v. Mann,* 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Further, mere negligence, malpractice, or incorrect diagnosis is not actionable under § 1983. *Estelle,* 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010)

(internal quotation marks and citation omitted); see also *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985).

Reviewing the Plaintiff's medical records, it is clear that the Plaintiff has received dental treatment. (Defs.' Mem. Supp. Summ. J. Mot. Attach. 4 Aff. of Candace Wigfall Ex. A.) He has been evaluated several times as to whether he meets the standard for dentures and each time the dental providers at both institutions have determined that the Plaintiff's dentures do not need to be repaired and that the Plaintiff does not qualify under the SCDC policies for new dentures. (Defs.' Mem. Supp. Summ. J. Mot. Affs. Attachs. 4-6 - Affs. of Wigfall, Amber Weaver, and Dr. John Fulmer and Exs.) Furthermore, examinations of the Plaintiff's dentures did not reveal any sharp edges and no injuries were found to the inside of his mouth. *Id.* While the Plaintiff might not agree with these evaluations and dental treatment he has received, the record established that these Defendants have not been deliberately indifferent to his medical needs.

Additionally, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his dental treatment against the non-medical Defendants,

Jon E. Ozmint, Stan Burke, Gregory Knowlin, and Officer Wilson.[4] To the extent that the Plaintiff seeks relief from these Defendants under a theory of respondeat superior, his claims must fail. The doctrine of respondeat superior cannot support liability under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, ---U.S. ----, ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). Mere knowledge is not sufficient to establish personal participation. *Id.* As noted above, the Plaintiff has not alleged any involvement by these Defendants. Accordingly, the Defendants Ozmint, Burtt, Knowlin, and Wilson should be granted summary judgment on the Plaintiff's medical indifference claims.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment (Dkt. # 27) be GRANTED and the Complaint be Dismissed with Prejudice.

IT IS SO RECOMMENDED.

                                        s/Bruce Howe Hendricks
                                        United States Magistrate Judge

September 30, 2010
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**

---

[4] The Defendant Ozmint is the Director of the SCDC. The Defendant Burtt is the Warden of the LCI. The Defendant Knowlin is the Warden of the TCI. The Defendant Wilson was a Corrections Officer at the LCI.